No. 5942.

### J. M. Paul et al. v. C. A. Willis et al.

1. ADMINISTRATION.—An administration on the estate of one who fell at the massacre at Goliad in 1836, which was begun ten years after his death, will be conclusively presumed to have been illegal, in the absence of some fact affirmatively shown to establish its necessity.

2. SAME.—Under such an administration nothing was done except to file an inventory. Seven years thereafter another application was filed to re-open the administration, in which the place where the deceased died: was falsely stated, and which disclosed no ground for the administration except that a creditor had employed the applicant for letters, who was an attorney, to collect a claim for him, *held*: That such administration was void, and no legal rights could be acquired by a purchaser under it.

3. JUDGMENT.—A void judgment is always subject to collateral attack, and it can derive no legal sanction from lapse of time.

APPEAL from Bell. Tried below before the Hon. W. A. Black-burn.

This is a suit of trespass to try title which was instituted by Catherine A. Willis, and others (who are admitted to be the heirs of Matthew Byrne, deceased, who was killed at the massa-cre at Goliad in March, 1836,) in the district court of Bell county, Texas, on December 8, 1883, against J. T. Alexander and others, for one thousand two hundred and eighty acres of land in Bell and Falls counties, Texas, patented to heirs of Mathew Byrne, deceased, which is described as on waters of Pond creek, about fourteen miles west southwest from Falls of Brazos, patent No. 558, vol. 4, issued on May 18, 1850, by virtue of bounty warrant No. 495, issued by John Pettis, Adjutant General, January 23, 1849. On March 9, 1885, J. M. Paul and others, who are admit-ted to be the sole heirs of James Paul, deceased, late of Galves-ton county, Texas, to whom an administrator's deed for same tract of land was made by A. F. James, intervened in said suit, filing petition for trespass to try title against both plaintiffs and defendants; also claiming the title and possession of above de-scribed tract of land. Amendments were filed making proper parties by plaintiffs and intervenors up to the trial of the cause. On the trial of the cause in said court without a jury, on De-

cember 19, 1885, plaintiffs recovered judgment against defendants and intervenors for the title and possession of the land and defendants recovered judgment against plaintiffs for valuable improvements made in good faith, and against their warrantors for the land. Intervenors made a motion for new trial, which was overruled, and gave notice of appeal. Defendants did not appeal from the judgment. The conclusions of law and fact found by the court are quite lengthy and would not tend to make more clear the opinion of the court which states the essential facts on which it is based.

*Monteith & Furman*, for intervenors: On their proposition that the letters of administration *de bonis non* upon the estate of Mathew Byrne were legally issued to A. F. James in probate court of Galveston county, in the year 1853, and that A. F. James duly qualified and acted as administrator *de bonis non* of said estate, and that all of his acts in such capacity were entitled to full faith and credit, and that the court erred in its conclusions of law in finding that the administration was a nullity, and A. F. James's acts in said capacity as null and void, for which reason judgment of the court ought to be reversed and set aside, cited W. F. Neal et al. v. H. C. Bartleson et al., Texas Law Review, volume 6, No. 11, page 165; Lynch v. Baxter, 4 Texas, 431; Dancey v. Stricklinge, 15 Texas, 560; Houston v. Ferguson, 39 Texas, 588; Baker v. Coe, 20 Texas, 429; Bartlett v. Coke, 15 Texas, 471.

That the probate court of Galveston county, had jurisdiction of said estate of Mathew Byrne, deceased, at the time when John Byrne was appointed administrator of the estate of Mathew Byrne, deceased; and also at the time when A. F. James was appointed administrator *de bonis non* of said estate, and the court erred in finding that said court had no jurisdiction to grant said letters, for which error judgment in this cause ought to be reversed and set aside, they cited Burditt v. Howth, 45 Texas, 466; Fitch v. Boyer, 51 Texas, 4̴; Wheeler v. Ahrenbeck, 54 Texas, 536.

In the application for letters of administration *de bonis non* by A. F. James, it was represented that Mathew Byrne was a citizen of Galveston county, Texas, which allegation was considered and acted upon by the probate court of Galveston county, and the decision of said question can not again be opened for consideration of the same, if true, having given

good ground for taking jurisdiction of said estate, and the district court erred in questioning the jusisdiction of the probate court of Galveston county, for which error judgment ought to be reversed, cited Guilford v. Love, 49 Texas, 715; Murchison v. White, 54 Texas, 82.

That the proceedings of the probate court were in every respect just and regular, and in any event the greatest objection that can be urged to the proceedings of the probate court of Galveston county, is that the same were irregular, which question can not be inquired into collaterally as was done in this cause, and that the district court of Bell county, Texas, did not have any jurisdiction to hear and determine said questions, and that the district court erred in entertaining the same, for which judgment should be reversed and set aside, and a new trial granted; they cited Bassett v. City of Lavaca, 6 Texas, 54; McAnear v. Epperson, 54 Texas, 220; Alexander v. Maverick, 18 Texas, 479; W. F. Neil et al. v. H. C. Burleson et al., Texas Law Review, volume 6, No. 11, page 165; Parr v. Boyce, 12 Texas, 440 to 449; Dancey v. Stricklinge, 15 Texas, 557; Bartlett v. Coke, 15 Texas, 471, 478; Paterson v. Lowry, 48 Texas, 408; Rindge v. Oliphant, 62 Texas, 686; Mikeska v. Blum, 63 Texas, 44.

That the probate court of Galveston county, was a court of general jurisdiction in matters pertaining to estates of deceased persons, and that said court properly acquired jurisdiction of said estates or at least having assumed jurisdiction of the estates, all presumptions of law are in favor of its jurisdiction, and further a jurisdictional fact was alleged and passed upon in favor of its jurisdiction from which no appeal was prosecuted, and that the same is final and binding upon said estate and its heirs which can not be questioned, disputed or set aside in the court of another county in the same State; they cited Murchison v. White, 54 Texas, 83; Johnson v. Wilson, 53 Texas, 42; Grande v. Herrara, 15 Texas, 533; Giddings v. Steel, 28 Texas, 750; Lewis v. Ames, 44 Texas, 335; Kleineke v. Woodward, 42 Texas, 314; Taylor v. Snow, 47 Texas, 465; Rogers v. Kennard, 54 Texas, 36, 37; George v. Watson, 19 Texas, 354; Mikeska v. Blum, 63 Texas, 44.

*Geo. W. Tyler, Harris & Saunders* and *W. K. Saunders,* for appellee: On their proposition that the probate court of Galveston county, Texas, had no jurisdiction in 1846 to open administration upon the estate of Mathew Byrne, who died in

1836, the necessity for administration (if there was any necessity), having ceased to exist by the lapse of time, and no debts against said Mathew Byrne being shown by the petition and other proceedings in the probate court, cited Waldrup v. Jones, 23 Texas, 489–495; Marks v. Hill, 46 Texas, 347, 350; Hearn v. Camp, 18 Texas, 551; Brockenborough v. Melton, 55 Texas, 501; Boyle v. Forbes, 9 Texas, 41; Blair v. Cisneros, 10 Texas, 45; Francis v. Hall, 13 Texas, 191, 193; Withers v. Patterson, 27 Texas, 499, et seq.; Herndon v. Mills, 60 Texas, 359; McNally v. Haynes, 59 Texas, 585; Guilford v. Love, 49 Texas, 735, et seq.; Alexander v. Maverick, 18 Te      197; Murchinson v. White, 54 Texas, 32.

That no presumption will be indulged in favor of the validity of the proceedings of the probate court, where, as in this case, the record of said proceedings show affirmatively that said court did not have jurisdiction in the particular case, and said proceedings are a nullity; they cited McMahan v. Rice, 16 Texas, 337, et seq.

COLLARD, JUDGE. It was shown that ten years had expired after Mathew Byrne fell at Goliad before there was any administration taken out upon his estate, and then the administration was opened in Galveston county by the petition of John Byrne, brother of deceased, which alleged no fact showing any necessity for an administration. All debts were presumed to have been paid, and none are shown to exist; the estate of which decedent died possessed and all to which he was entitled had long since vested in his heirs. Certainly after Byrne had been dead for so great a lapse of time no legal administration upon his estate could be had without alleging some facts which would show a necessity for it. It would be conclusively presumed to be unnecessary and illegal without such a showing. There was but one jurisdictional fact alleged in the petition for letters by John Byrne. It was not alleged where his estate was situated or in what county he resided, but it was alleged that he was killed in the Goliad massacre. This fact appeared affirmatively in the petition, and this was sufficient to establish the fact that Galveston county had no jurisdiction of the estate. The law in force at the time, the act of 1846, which took effect the thirteenth of July, gave jurisdiction to counties upon estates of deceased persons; first, in the county where he had a fixed domicile or residence; second, where he owned real estate; or third, where his prin-

cipal effects were; and fourth, where he died. The law of 1840 contained the same provisions. (See Hart. Dig., arts. 1087 and 1030.) The petition did not show any fact that would give Galveston county control of the estate, but did show that he died in another county.

If we look to evidence *aliunde,* the record, we learn that his residence was in San Patricio county, and his estate was also there, but we are not called on to look beyond the record itself, nor would it ordinarily be permissible under the views expressed in Murchison v. White (54 Texas, 81). We take the petition itself and from that we see Galveston county was not the proper county for the administration, if any could have been granted.

But this administration was allowed to lapse. Nothing was ever done by the administrator, and no order was ever taken in the succession after the inventory was filed. In 1853, seven years after the inventory was filed, A. F. James applied for letters, showing no ground for opening the succession except that De Cordova had employed him to collect a claim against the estate for eighty dollars, for locating the one thousand two hundred and eighty acres of land in controversy. His application stated, what the court must have known to be false, that Mathew Byrne died in Galveston county in 1846, certainly what James and DeCordova knew was false. The record of the former administration was refered to in James's application and in that it appeared to him and the court that Mathew Byrne died in 1836, in the "Goliad massacre." The first administration, if it ever had a legal existence, was presumed to be closed. The petition for letters by James states he had made diligent search and inquiry for the former administrator and he could not be found. The truth was he was dead; had returned to New York and had died in 1851 at the house of his sister.

The reopening of an administration seven years after the last order had been made in a previous administration and seventeen years after the death of the intestate could not be tolerated under the circumstances shown in this case. (Withers v. Patterson, 27 Texas, 492, 493; Boyle v. Forbes, 9 Texas, 39, 40; Duncan v. Vise, 49 Texas, 610, 611.

In the last case the court uses language which we deem appropriate and applicable to this case. Associate Justice Moore says: "It is too plain to require argument to demonstrate that DeCordova administered upon the estate not for those in any way interested in it, but those to be benefited by the costs to be

thereby incurred, or who wished to profit by the sale of the certificate belonging to the decedent. The time and circumstances under which the pretended letters were granted render it obvious that although nominally he obtained letters of administration on the estate of a deceased volunteer of the republic, he, in fact, administered upon that of the heirs. Under the guise and pretense of administration, he attempted to sell and transfer * * property of the heirs with which neither he nor his confederates had any right to intermeddle."

DeCordova, in the case under consideration, had made no contract that could be recognized as valid except as made so by presumption of the truth of the recitals in the order of sale in the James administration, "recognizing a duly registered debt of eighty dollars," and the fact that James, the agent employed by DeCordova to collect the debt, had as administrator "allowed it." But be that as it may, such a state of facts, if they existed, could not, after so great a lapse of time, be any authority for reopening an administration that the law would presume had been closed. There are facilities for converting an estate to improper uses under a void administration in an improper court, and so long after the death of the decedent, when no one interested in the estate would be supposed to be looking after it, that are not offered in a fair and legal administration; and for that reason, if for no other, such administrations should not be countenanced. It is apparent that this administration was obtained to consume the estate and misapply it under the semblance of legal authority and by the aid of the probate court. Such fact of itself would not render the administration void as to third parties, that is, the attempt to misapply the estate would not, but the fact does furnish a reason why the law will, after such lapse of time, presume and declare such administrations void.

We are of the opinion that both the administrations were void, and being so, a purchaser at a sale in good faith under the administration is not protected. He could not acquire any title under a void administration. (Withers v. Patterson, supra; Hunt v. Horton, 12 Texas, 287.) See other authorities to support the opinion. (Waldrup v. Jones, 23 Texas, 489, et seq.; 46 Texas, 347; 55 Id., 501.)

A void judgment can not bind any one, and it is well settled it may be collaterally attacked. Lapse of time can not aid it or or give it any force as a judgment. These administrations

being nullities, the heirs of Byrne forfeited no right by failing to set it aside or by delay in suing for the land.

There was no error in the judgment of the court, and it ought to be affirmed.

*Affirmed.*

Opinion adopted November 8, 1887.