In the Interest of E.R., J.B., E.G., and C.L., Children.

No. 05–09–01505–CV.

Court of Appeals of Texas, Dallas.

March 3, 2011.

Jeremy C. Martin, Simpson Martin, LLP, Dallas, TX for Appellant.

Michael Kotwal, Michael R. Casillas, Assistant District Attorney–Chief Prosecutor, Kimberly Pfannenstiel Duncan, Assistant District Attorney, Dallas, TX, for Appellee.

Before Justices FITZGERALD, MURPHY, and FILLMORE.

## OPINION

Opinion By Justice FILLMORE.

Appellant appeals the trial court's judgment terminating her parental rights. In two issues, appellant asserts the trial court erred by denying her motion for new trial and by failing to sustain her objections to an affidavit of citation by publication. We affirm the trial court's judgment.

### Background

The Texas Department of Family and Protective Services (DFPS) filed a petition for termination of appellant's parental rights to her four minor children. The petition for termination included an address for appellant where service could be effected. After failing to effect personal service on appellant, the DFPS served appellant with citation by publication. Appellant did not appear at the termination proceeding, but she was represented at the proceeding by her attorney ad litem. *See* TEX. FAM.CODE ANN. § 107.013(a)(2) (West 2008) (in suit filed by governmental entity in which termination of parent-child relationship requested, court shall appoint attorney ad litem to represent interests of parent served by citation by publication). On November 14, 2007, the trial court signed a decree terminating appellant's parental rights to the children, finding that termination of the parent-child relationship between appellant and the children was in the children's best interest.[1]

On November 16, 2009, appellant filed a motion for new trial under rule 329 of the rules of civil procedure. The trial court denied the motion for new trial. Appellant brought this appeal.

---

1. The decree also terminated the parental rights of the biological fathers of the children, finding that termination of their parental rights was in the best interest of the children.

### Appellant's Motion for New Trial

▮ In her first issue, appellant asserts the trial court erred by denying her motion for new trial because the DFPS committed extrinsic fraud in procuring service of citation by publication. The DFPS asserts appellant's motion for new trial under rule 329,[2] filed two years after the decree of termination was signed, was untimely under the family code's strict deadline for contesting the validity of a termination decree.

▮ Because appellant presented her challenge to the validity of a termination decree in a motion for new trial, we analyze this challenge under the standard of review applicable to the denial of a motion for new trial. *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 623 (Tex.App.-Houston [1st Dist.] 2009, pet. denied). We review a trial court's refusal to grant a motion for new trial for abuse of discretion. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex.2009). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). A trial court's clear failure to analyze and apply the law correctly constitutes an abuse of discretion. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding); *Cayton v. Moore*, 224 S.W.3d 440, 445 (Tex.App.-Dallas 2007, no pet.).

In 1997, the legislature amended section 162.012 of the family code, entitled "Direct or Collateral Attack," regarding the time period during which parties are allowed to challenge the validity of an adoption decree. Under the version of section 162.012 prior to the amendment, parties were allowed to challenge the validity of an adoption decree up to two years after the order was entered. *See* Act of May 25, 1973, 63d Leg., R.S., ch. 543, § 1, sec. 16.012, 1973 Tex. Gen. Laws 1411, 1431, *amended by* Act of May 28, 1997, 75th Leg., R.S., ch. 601, § 1, 1997 Tex. Gen. Laws 2118, 2118. The 1997 amendment reduced the time to contest the validity of an adoption order to six months, providing in relevant part:

> (a) Notwithstanding Rule 329, Texas Rules of Civil Procedure, the validity of an adoption order is not subject to attack after six months after the date the order was signed.

TEX. FAM.CODE ANN. § 162.012(a) (West 2008). That legislation also added section 161.211 to the family code, entitled "Direct or Collateral Attack on Termination Order." Act of May 28, 1997, 75th Leg., R.S., ch. 601, § 2, 1997 Tex. Gen. Laws 2118, 2118 (current version at TEX. FAM. CODE ANN. § 161.211 (West 2008)). Like the deadline in the amendment to section 162.012, section 161.211 includes a six-month deadline for challenging the validity of a termination order affecting the parental rights of a person served by citation by publication notwithstanding rule 329:

> (b) Notwithstanding Rule 329, Texas Rules of Civil Procedure, the validity of an order terminating the parental rights of a person who is served by citation by publication is not subject to collateral or direct attack after the sixth month after the date the order was signed.

TEX. FAM.CODE ANN. § 161.211(b).

The bill analysis accompanying the 1997 legislation specifies that the purposes of the amendment to section 162.012 and the

---

**2.** Rule 329 provides in pertinent part:
   In cases in which judgment has been rendered on service of process by publication, when the defendant has not appeared in person or by attorney of his own selection:

(a) The court may grant a new trial upon petition of the defendant showing good cause, supported by affidavit, filed within two years after such judgment was signed. TEX.R. CIV. P. 329.

addition of section 161.211 were to reduce from two years to six months the period during which the validity of an adoption order would be subject to attack and to "establish a six-month window after which the validity of an order terminating the parental rights of a person would not be subject to attack." Senate Comm. on Juvenile Justice and Family Issues, Bill Analysis, Tex. S.B. 52, 75th Leg., R.S. (1997); *see also In re S.N.,* 272 S.W.3d 45, 61 (Tex.App.-Waco 2008, no pet.) (op. on reh'g) (person whose parental rights terminated must file any collateral attack on termination decree within six months after decree signed); *In re C.R.P.,* 192 S.W.3d 823, 825, 826 (Tex.App.-Fort Worth 2006, no pet.) (biological mother, in challenging termination of her parental rights, asserted affidavit of relinquishment was void because obtained by fraud, duress, or coercion; challenge to validity of order terminating person's parental rights under section 161.211 and to validity of adoption order under section 162.012 not subject to attack after six months following the dates on which respective orders signed); *In re Lambert,* 993 S.W.2d 123, 132 n. 4 (Tex.App.-San Antonio 1999, no pet.) (direct and collateral attacks are subject to constraints imposed by statutory and common law and court rules, with additional constraints requiring direct and collateral attacks on termination orders filed within six months of termination order).

The family code's statutory scheme for protecting a child's welfare focuses on the child's best interest. *See, e.g.,* TEX. FAM. CODE ANN. §§ 51.11(b) (juvenile court may appoint guardian ad litem to protect interests of child in proceedings if parent or guardian incapable or unwilling to make decisions in best interest of child), 153.001 (public policy of state to provide safe, stable, and nonviolent environment for child), 161.101 (petition for termination of parent-child relationship sufficient if it alleges in statutory language ground for termination and that termination is in best interest of child) (West 2008); *see also In re A.V.,* 113 S.W.3d 355, 361 (Tex.2003) (upholding retroactive application of statute allowing termination of parental rights for those incarcerated for extended period of time because state has duty to protect safety and welfare of its children, and this valid exercise of police power by legislature to safeguard public safety and welfare is recognized exception to unconstitutionality of retroactive laws).

■ "The State's fundamental interest in parental-rights termination cases is to protect the best interest of the child. This interest is aligned with another of the child's interests—an interest in a final decision on termination so that adoption to a stable home or return to the parents is not unduly prolonged." *In re M.S.,* 115 S.W.3d 534, 548 (Tex.2003); *see also In re L.M.I.,* 119 S.W.3d 707, 710–11 (Tex.2003) (legislature's intent is that cases terminating parental rights be expeditiously resolved, thus promoting child's interest in final decision and thus placement in safe and stable home); *In re B.L.D.,* 113 S.W.3d 340, 353 (Tex.2003) (section 161.211 enacted to ensure children's lives not kept in limbo); *In re A.V.,* 113 S.W.3d at 361 (although termination suit can result in parent's loss of legal relationship with the child, primary focus is protecting best interests of the child); *Goodson v. Castellanos,* 214 S.W.3d 741, 749 (Tex.App.-Austin 2007, pet. denied) (six-month deadline in section 162.012 comports with public policy of State to provide children with a stable environment in which to be raised); House Comm. on Juvenile Justice and Family Issues, Bill Analysis, Tex. H.B. 409, 79th Leg., R.S. (2005) ("In 2001, the Texas Legislature established specific post-judgment procedures for appeals of final orders in suits affecting the parent-child relationship

in TEX. FAM.CODE ANN. § 263.405(b) (West 2008) ] in an effort to decrease the amount of time that abused or neglected children have to spend in foster care.... Unfortunately, recent appellate decisions have effectively repealed the Legislature's attempt to address the post-judgment delay issue. These appellate court decisions hold that the Legislature did not really mean what it said and that no adverse consequences flow from an appellant's failure to comply with this Legislature's 2001 enactment. These decisions frustrate the Legislature's effort to speed up the post-judgment process in parental termination cases in order to shorten the time to final resolution."); *In re T.C.*, No. 10–10–00207–CV, 2010 WL 4983512, at *7 (Tex.App.-Waco Dec. 1, 2010, pet. denied) (mem. op.) ("By enacting the deadlines that exist in cases where the Department has conservatorship of children, the Legislature has demonstrated its intent to achieve permanence for children as promptly as possible. This is because 'the need for permanence is the paramount consideration for the child's present and future physical and emotional needs.' ") (quoting *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 87 (Tex.App.-Dallas 1995, no writ)); *In re G.W.P.*, No. 14–08–00035–CV, 2009 WL 2568292, at *2 n. 4 (Tex.App.-Houston [14th Dist.] Aug. 20, 2009, no pet.) (mem. op.) (addressing the appellant's issue on the merits would contravene legislature's intent in enacting TEX. FAM.CODE ANN. § 263.405(i)—furthering the legislative policy of decreasing post-judgment delay in termination cases); *see also In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 647 (Tex.2009) (orig. proceeding) ("The Family Code evidences a clear intent by the Legislature to prevent cases from lingering on court dockets for extended periods beyond specified timeframes by agreement *or otherwise.*") (citing TEX. FAM.CODE ANN. § 263.402(a) (West 2008)).

This Court's objective is to effectuate the legislature's intent in enacting a statute. *City of Dallas v. Abbott*, 304 S.W.3d 380, 384 (Tex.2010). As recently stated by this Court:

[C]ourts are responsible for a true and fair interpretation of the written law, and it must be an interpretation which expresses only the will of the makers of the law, not forced or strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain. Judicial judgment—awareness of the line between adjudication and legislation and refusing to cross it—means giving wide berth to legislative judgment.

*Lone Star HMA, L.P. v. Wheeler*, 292 S.W.3d 812, 817 (Tex.App.-Dallas 2009, no pet.) (citations omitted). A court construes a statute first by looking to the plain and common meaning of the statute's words. *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009). If a statute is clear and unambiguous, we need not resort to rules of construction. *Grimes Cnty. Bail Bond Bd. v. Ellen*, 267 S.W.3d 310, 316 (Tex.App.-Houston [14th Dist.] 2008, pet. denied) (citing *In re Canales*, 52 S.W.3d 698, 702 (Tex.2001) (orig. proceeding)); *see also Tune v. Tex. Dep't of Pub. Safety*, 23 S.W.3d 358, 363 (Tex.2000) (courts must enforce plain meaning of unambiguous statute). The mandatory language of family code section 161.211 leaves no room for a construction other than a requirement that any collateral or direct attack on the termination of parental rights, including a motion for new trial, be filed no more than six months after the termination order is signed. In *In re H.R.H.*, No. 05–07–01148–CV, 2008 WL 3984055 (Tex.App.-Dallas Aug. 29, 2008, no pet.) (mem. op.), more than six months after a termination order was signed, the father filed a petition for bill of review to set aside that

order. Under the applicable law of section 161.211(a) and (b), this Court stated that any collateral or direct attack on the termination order was precluded after six months. *Id.* at *3–4 (father "is still *barred* from relief because his bill of review was filed after the time period set forth" in family code section .161.211(a) and (b) (emphasis added))[3]; *see also In re L.N.M.*, 182 S.W.3d 470, 474 (Tex.App.-Dallas 2006, no pet.) (bill of review was timely as filed within six-month time frame contemplated by section 161.211(b)); *In re B.G.*, No. 01–09–00579–CV, 2010 WL 3722870, at *2 n. 3 (Tex.App.-Houston [1st Dist.], Sept. 23, 2010, pet. denied) (mem. op.) (biological father filed bill of review challenging termination of his parental rights within six months of termination order as contemplated by section 161.211 of the family code) (citing *In re L.N.M.*, 182 S.W.3d at 473–74); *In re M.D.G.*, No. 10–07–00047–CV, 2007 WL 926074, at *1 (Tex.App.-Waco Mar. 28, 2007, pet. denied) (mem. op.) (court of appeals had no jurisdiction where untimely notice of appeal filed more than year after order of termination signed).

Our interpretation of the statutory language of section 161.211 is consistent with the interpretation by other courts of similar language in section 162.012(a). *In re S.D.S.-C*, No. 04–08–00593–CV, 2009 WL 702777, at *1 (Tex.App.-San Antonio Mar. 18, 2009, pet. denied) (mem. op.) (under plain and unambiguous language of section 162.012(a), adoptions cannot be attacked more than six months after issuance of an adoption order *on any basis*) (emphasis added); *Goodson*, 214 S.W.3d at 748–49 ("[S]ection 162.012 of the family code *prohibits* all challenges to an adoption decree if they are filed more than six months

after an adoption order is signed.... By enacting this statute, the legislature clearly evidenced its intent that it is the public policy of this State that adoptions cannot be attacked more than six months after the issuance of the adoption *on any basis*.") (internal citations omitted and emphasis added); *Hobbs v. Van Stavern*, 249 S.W.3d 1, 4 and n. 4 (Tex.App.-Houston [1st Dist.] 2006, pet. denied) (noting legislature made no exceptions to six-month time limitation for challenging adoption—"*not for challenges to purportedly void adoption orders*, not for good cause, and not for public policy reasons"—and noting important public policy embodied in section 162.012 to provide finality to adoption orders) (emphasis added).

■ We are unpersuaded by appellant's contention that, by failing to raise it in the trial court, the DFPS waived reliance on the six-month deadline contained in family code section 161.211(a) as a bar to appellant's challenge to the termination decree. The six-month deadline in family code section 161.211 is not a plea in avoidance, but is, rather, a bar to or preclusion of a challenge to a termination order more than six months after the termination order is signed. We disagree that the six-month deadline in section 161.211 is a statute of limitations affirmative defense that is waived if not pleaded or presented to a trial court, although we recognize that certain other courts of appeals have held to the contrary. *See, e.g., In re M.Y.W.*, No. 14–06–00185–CV, 2006 WL 3360482, at *2 (Tex.App.-Houston [14th Dist.] Nov. 21, 2006, pet. denied) (mem. op.) (six-month limitation on attacks on termination ruling in section 161.211 is affirmative defense); *In re Bullock*, 146 S.W.3d 783, 790–91 (Tex.App.-Beaumont 2004, no pet.) (orig.

---

**3.** The dissent attempts to distinguish *In re H.R.H.*, arguing the appellant in that case was not contending a lack of service. This argument is inapposite to our recognition in *In re*

H.R.H. of the six-month mandate in section 161.211 for any collateral or direct attack on the validity of a termination order.

proceeding) ("Essentially, section 161.211's six month limitation on attacks on termination rulings is an affirmative defense" required to be pled and presented to trial court); *In re S.A.B.*, No. 04–01–00795–CV, 2002 WL 31060158, at *1 (Tex.App.-San Antonio Sept. 18, 2002, no pet.) (supp. op. on reh'g) (not designated for publication) (defense waived where the appellant did not raise section 161.211 limitations provision as defense in pleadings or at hearing before trial court).

A statute of limitations requires that a suit be commenced within a prescribed period of time. Rather than referring to a period for commencement of a suit, section 161.211 sets out a time limit of six months in which to challenge the validity of a termination order previously signed. Construing the six-month deadline for challenging a termination of parental rights in section 161.211 to be merely a statute of limitations affirmative defense that is waived if not asserted ignores the clearly expressed intent of the legislature that the best interests of children are promoted by finality of decisions terminating parental rights. In section 161.211, the legislature has established a six-month time period within which a motion for new trial must be filed after a parental termination order is signed. *See* TEX. FAM.CODE ANN. § 161.211(b). Accordingly, an untimely motion for new trial following entry of a parental termination order is barred. *See Bitterman v. State*, 195 S.W.3d 777, 779 (Tex.App.-Waco 2006, pet. ref'd) (trial court does not have jurisdiction to hear untimely motion for new trial); *see also In re D.L.S.*, No. 05–08–00173–CV, 2009 WL

1875579, at *3 (Tex.App.-Dallas 2009, no pet.) (quoting *McEwen v. Harrison*, 162 Tex. 125, 345 S.W.2d 706, 710 (1961)) (Texas Supreme Court has determined that when time for filing motion for new trial has expired and relief may not be obtained by appeal, bill of review is exclusive method of vacating default judgment rendered in a case in which trial court had jurisdictional power to render it; "Into this category will fall those cases in which a default judgment is asserted to be void for want of service, or of valid service, of process.").

Appellant does not dispute that her motion for new trial was a direct attack on the validity of the termination decree. *See Sweetwater Austin Props., L.L.C. v. SOS Alliance, Inc.*, 299 S.W.3d 879, 885 (Tex. App.-Austin 2009, pet. denied) (examples of direct attacks include appeals, motions for new trial, and equitable bills of review). Nor does appellant dispute that her direct attack on the validity of the termination decree was filed more than six months after the termination decree was signed. *See In re J.H.*, No. 14–03–00110–CV, 2004 WL 3202862, at *2 (Tex.App.-Houston [14th Dist.] Nov. 24, 2004, no pet.) (mem. op.) (section 161.211 of the family code barred biological mother's bill of review filed more than six months after the termination order was signed). Appellant's motion for new trial was not filed within the statutorily mandated period under family code section 161.211(b) for challenging the validity of the termination decree and her challenge is barred.

■ The dissent asserts we must not construe the statute in a manner that renders it unconstitutional.[4] The dissent

---

4. "Courts are to presume that a statute is constitutional and should not reach a constitutional issue unless absolutely required." *In re C.M.D.*, 287 S.W.3d 510, 515 (Tex.App.-Houston [14th Dist.] 2009, no pet.); *see also Pena v. State*, 191 S.W.3d 133, 136 (Tex.Crim. App.2006) ("If there is one doctrine more deeply rooted than any other in the process of

constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable.") (quoting *Clinton v. Jones*, 520 U.S. 681, 690, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997)); *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003) ("We begin our analysis by presuming the statute is constitutional.").

would hold that section 161.211's six-month bar to appellant's direct or collateral attack on the validity of a termination order is unconstitutional. It is well settled that an involuntary termination of parental rights involves fundamental constitutional rights. *See Holick v. Smith,* 685 S.W.2d 18, 20 (Tex.1985). Appellant, however, has not argued her constitutional rights have been violated or otherwise challenged the constitutionality of the statute and, therefore, has not preserved or presented the issue for our review. *See* Tex.R.App. P. 33.1(a).

"Allowing appellate review of unpreserved error would undermine the Legislature's intent that cases terminating parental rights be expeditiously resolved." *In re L.M.I.,* 119 S.W.3d at 711. The Texas Supreme Court has specifically discussed preservation of error in the context of parental rights termination cases:

> [T]his Court's precedents establish that our procedural rules bar review of unpreserved error except in very narrow circumstances. We have followed this rule when other constitutional rights are at stake. Moreover, we have declined to review unpreserved complaints even when a parent's constitutional interests are implicated.

*In re B.L.D.,* 113 S.W.3d at 352 (internal citations omitted). After considering the purposes of the rules and statutes involved, the court concluded that error must be preserved even in parental rights termination cases, and that when not preserved, the court of appeals errs by considering such a claim. *Id.* at 353. The supreme court stated:

> In termination cases, judicial economy is not just a policy—it is a statutory mandate. To ensure that children's lives are not kept in limbo while judicial processes crawl forward, the Legislature requires that termination proceedings conclude at the trial level within a year and

a half from the date of a child's removal from the parent. *See* Tex. Fam.Code Ann. § 263.401 (providing that a trial court must dismiss a case within one year, but permitting one 180–day extension).... In addition, the Legislature limits the time to collaterally or directly attack the validity of an order terminating parental rights until the sixth month after the date the order is signed. *Id.* § 161.211. The Legislature further requires appellate courts to accelerate review of these cases and prioritize them over all other civil cases. *Id.* § 109.002(a). Appellate review of potentially reversible error never presented to a trial court would undermine the Legislature's dual intent to ensure finality in these cases and expedite their resolution.

*In re B.L.D.,* 113 S.W.3d at 353; *see also In re K.A.F.,* 160 S.W.3d 923, 928 (Tex. 2005) ("the rules governing error preservation must be followed in cases involving termination of parental rights, as in other cases in which a complaint is based on constitutional error"); *In re L.M.I.,* 119 S.W.3d at 711 (in parental-termination appeal, due process argument was not preserved below; "Both we and the United States Supreme Court have held that constitutional error was waived in comparable circumstances."); *Tex. Dep't of Protective & Regulatory Servs. v. Sherry,* 46 S.W.3d 857, 861 (Tex.2001) (court would not consider constitutional arguments in paternity suit where constitutional claims were not asserted in trial court pleadings or at trial court hearing on standing; court followed the rule that "[A] claim, including a constitutional claim must have been asserted in the trial court in order to be raised on appeal.") (quoting *Dreyer v. Greene,* 871 S.W.2d 697, 698 (Tex.1993)); *In re Baby Boy R.,* 191 S.W.3d 916, 921 (Tex.App.-Dallas 2006, pet. denied) (quoting *In re L.M.I.,* 119 S.W.3d at 708) ("In a termi-

nation case, 'adhering to our preservation rules isn't a mere technical nicety; the interests at stake are too important to relax rules that serve a critical purpose.' "); *In re S.A.P.*, 169 S.W.3d 685, 694 (Tex.App.-Waco 2005, no pet.) (mother asserted section 161.211, providing only a six-month window for a direct or collateral attack on the validity of a termination order, is unconstitutional; complaint was not raised in trial court, so was not preserved for appellate review).

It is not the proper role of this Court to create arguments for an appellant. We are restricted to addressing the arguments actually raised, not those that might have been raised. *Feagins v. Tyler Lincoln–Mercury, Inc.*, 277 S.W.3d 450, 455 (Tex. App.-Texarkana 2009, no pet.). The dissent's assertion that section 161.211 is unconstitutional as applied in this proceeding does not enable us to review an issue neither preserved nor presented. We agree with those cases that have specifically concluded that error must be preserved even in parental rights termination cases, and that when not preserved, the court of appeals errs by considering such a claim.[5]

This case presents a graphic demonstration of why the legislature enacted section 161.211 to protect the best interests of children by ensuring that children's lives are not kept in limbo. *See In re B.L.D.*, 113 S.W.3d at 353; *see also In re M.S.*, 115 S.W.3d at 548 (in best interest of child to have final decision on termination so that adoption to a stable home or return to parents is not unduly prolonged). Here, a temporary order appointed the DFPS as the temporary managing conservator of appellant's children on November 16, 2006.[6] Appellant failed to appear for a January 2, 2007 status hearing, and prior orders, including the order appointing the DFPS to serve as the temporary managing conservator of appellant's four children, were ordered continued in force.[7] The DFPS filed the petition for termination of appellant's parental rights on May 25, 2007, and the termination decree was signed November 14, 2007. Appellant's motion for new trial was filed November 16, 2009, three years after the DFPS was made the temporary managing conservator of the children and two years after the termination order was signed. Despite enactment by the legislature of a statute limiting direct or collateral attacks on the termination order to six months, appellant waited two years to contest the termination order. Now, some four years after her children were removed from her care and three years after her parental rights were terminated, appellant seeks to have the children returned to her.

This is precisely the uncertainty and limbo in children's lives the legislature intended to avoid by enacting six-month

---

5. The dissent sets out a hypothetical scenario regarding service of citation by publication on an individual in military service. We take issue with this hypothetical. First, the hypothetical set of facts has no relationship to those before us in this case and the parties to this case have not briefed law governing members of the United States armed forces. Second, even in the hypothetical set up by the dissent to argue section 161.211 would be unconstitutional as-applied, a constitutional challenge could be waived by failure to raise it before the trial court, as it was by appellant in the pending appeal. *See Phillips v. Phillips*, 532 S.W.2d 161, 163 (Tex.Civ.App.-Aus-tin 1976, no writ). Third, the dissent's hypothetical scenario ignores the appointment of an ad litem for the absent servicemember in a termination proceeding. TEX. FAM.CODE ANN. § 107.012(a)(2).

6. The DFPS caseworker testified that appellant tested positive for methamphetamine at the birth of her fourth child on November 1, 2006.

7. According to the testimony of the DFPS caseworker at the termination proceeding, appellant made efforts to attend two hearings prior to the termination proceeding.

statutory bars to attacking the validity of termination and adoption orders. We note the dissent cites no case involving service by publication in an involuntary termination proceeding brought by the DFPS after enactment of section 161.211. Contrary to the dissent's interpretation of the statute, the language of section 161.211 leaves no room for a construction other than the requirement that an attack on the validity of a termination order be made within six months of the signing of the order. *See Wheeler*, 292 S.W.3d at 817. This Court must follow the plain language of the statute in order "to make decisions that are in the best interests of the children involved." *Goodson*, 214 S.W.3d at 750.

We conclude the trial court did not abuse its discretion in denying appellant's untimely motion for new trial. We overrule appellant's first issue.

In her second issue, appellant contends the trial court abused its discretion by failing to sustain her objections to the affidavit of citation by publication. Based on our disposition of appellant's first issue, we need not address her second issue. *See* Tex.R.App. P. 47.1.

The dissent concludes that the record before the trial court was insufficient to support due diligence for issuance of service by publication and, therefore, service by publication was not proper and the termination order was void.[8] However,

---

8. In concluding the record is insufficient to support due diligence for issuance of service by publication, the dissent condones a direct attack on the trial court's termination order contrary to the express terms of section 161.211. However, with respect to the due diligence exercised by DFPS to personally serve appellant, we note that the facts in this record show that service of citation at appellant's mother's address had been unsuccessful, appellant failed to provide an alternative address to the DFPS caseworker, and the DFPS pursued numerous avenues to obtain information concerning appellant's whereabouts. By affidavit, the caseworker testified that on March 20, 2007, appellant gave her mother's address as her contact address. The caseworker further testified in her affidavit that on August 20, 2007, (1) she received notification from the District Attorney of an inability to serve appellant with citation at appellant's mother's address, and (2) she had a telephone conversation with appellant in which appellant stated she was in the process of moving and did not have a permanent address. Indeed, in appellant's affidavit in support of her motion for new trial, appellant testified she informed the caseworker in the August 20, 2007 telephone conversation that appellant did not have an address separate from her mother's address. Further, the caseworker's affidavit lists nine other specific efforts to locate appellant, including contacts with IMPACT, Texas Vine System, Salvation Army, TXU Electric, Missing Person Clearinghouse, "voter registration," Dallas County Adult Probation, and "motor vehicle Tax Roles," and a review of information on the internet website www.anywho.com. The dissent's conjecture that appellant could have been served during a child visitation in August 2007 at the DFPS offices is rebutted by the dissent's own summary of the caseworker's testimony that her contact with appellant was minimal and appellant's appearance at prescheduled visitations and hearings was sporadic.

While appellant acknowledges in her brief that "good cause" for a petition for new trial under rule 329 entails lack of actual knowledge of the suit prior to rendition of judgment, appellant does not contend she lacked actual knowledge of the suit prior to rendition of the termination order. Rather, appellant contended at the hearing of the motion for new trial and in her brief that actual notice to a defendant of a pending suit without proper service is not sufficient. Based on this record, it is not surprising that appellant does not contend she did not receive notice of the termination proceedings. As noted above, appellant indicated in her affidavit in support of her motion for new trial that she informed the caseworker she did not have a separate address from her mother's address. Appellant's mother filed a motion for new trial within thirty days of the signing of the termination decree and was clearly aware of the termination proceedings.

that conclusion does not alter the outcome of this appeal. Section 161.211 explicitly provides that the *validity* of the termination order is not subject to direct or collateral attack after six months. *See* TEX. FAM.CODE ANN. § 161.211(b); *see also In re S.D.S.-C,* 2009 WL 702777, at *1; *Goodson,* 214 S.W.3d at 748–49; *Hobbs,* 249 S.W.3d at 4 and n. 4. The dissent cites *Paul v. Willis,* 69 Tex. 261, 7 S.W. 357, 359 (1887), for the proposition that a void judgment may be collaterally attacked. We do not dispute that general principle of law. However, the legislature did not bar collateral or direct attacks on the validity of a judgment by enacting section 161.211; rather, the legislature established the time period in which the validity of a termination order may be attacked. *See* TEX. FAM.CODE ANN. § 161.211(b); *see also id.* at (c) (noting that direct or collateral attack based on unrevoked affidavit of relinquishment of parental rights or affidavit of waiver of interest in a child is limited to issues relating to fraud, duress, or coercion, without exception to the mandated deadline of six months in which to attack the validity of termination order).

## Conclusion

We affirm the trial court's judgment.

MURPHY, J., dissenting.

Dissenting Opinion by Justice MURPHY.

L.R. (Mother) appeals the termination of her parental rights, arguing the trial court abused its discretion by denying her motion for new trial. Because I agree the trial court erred by signing the decree of termination based on invalid attempted service by publication and by failing to grant Mother's motion for new trial, I would reverse the trial court's judgment.

## Texas Family Code Subsection 161.211(b)

Although subsection 161.211(b) of the Texas Family Code was never raised or even mentioned by any party in the trial court, it has become the central issue on appeal. It is important to note at the outset what this case is not about. This is not an adoption case; nor does it involve a constitutional challenge to subsection 161.211(b). Importantly, this case also is not about the merits of the underlying suit for involuntary termination of Mother's parental rights or whether she had knowledge of the termination proceeding. Rather, the case involves interpretation of subsection 161.211(b) and whether the provision—considering the legislative intent as expressed in the plain language of the statute—is an absolute bar to Mother's challenge to the DFPS's attempted service of citation by publication.

Mother raises two issues on appeal, both involving the propriety of service of citation by publication and the trial court's subsequent denial of her motion for new trial. Not until three months after Mother filed her reply brief in this Court and briefing was closed did the DFPS file an "amended" brief, claiming subsection 161.211(b) was a jurisdictional bar to Mother's complaint that the trial court never obtained personal jurisdiction over her. The first time the DFPS ever mentioned subsection 161.211(b) was in its original appellate brief, in which it cited the provision as an affirmative defense of limitations that would be waived by failure to raise the issue in the trial court, citing *In re Bullock,* 146 S.W.3d 783, 790–91 (Tex.App.-Beaumont 2004, orig. proceeding), and *Compass Bank v. MFP Financial Services, Inc.,* 152 S.W.3d 844, 851 (Tex.App.-Dallas 2005, pet. denied).

The majority concludes subsection 161.211(b) is a jurisdictional bar that can-

not be waived, rejecting decisions from other Texas appellate courts to the contrary. *See In re M.Y.W.*, No. 14–06–00185–CV, 2006 WL 3360482, at *2 (Tex. App.-Houston [14th Dist.] Nov. 21, 2006, pet. denied) (mem. op.); *In re Bullock,* 146 S.W.3d at 790–91; *In re S.A.B.*, No. 04–01–00795–CV, 2002 WL 31060158, at *1 (Tex.App.-San Antonio Sept. 18, 2002, no pet.) (supp. op. on reh'g) (not designated for publication). The majority also concludes, as a matter of first impression in Texas, subsection 161.211(b) is a jurisdictional bar regardless of whether attempted service of citation by publication is invalid and the trial court never acquired personal jurisdiction over the parent. Subsection 161.211(b) provides in its entirety:

> Notwithstanding Rule 329, Texas Rules of Civil Procedure, the validity of an order terminating the parental rights of a person *who is served by citation by publication* is not subject to collateral or direct attack after the sixth month after the date the order was signed.

Tex. Fam.Code Ann. § 161.211(b) (West 2008) (emphasis added). I would conclude pursuant to the plain language of this statute that the bar to direct and collateral attacks on parental termination orders presumes *valid* service.

A trial court has no discretion in determining what the law is or applying the law to the facts. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding). Thus, the trial court's clear failure to analyze or apply the law correctly constitutes an abuse of discretion. *Id.* While the trial court here never had the opportunity to consider application of subsection 161.211(b), the majority applies the provision as an absolute bar to considering whether the trial court ever acquired personal jurisdiction over Mother. Accordingly, and because I disagree with such an interpretation, I begin my analysis with the principles of statutory construction to which we are bound.

In construing a statute, our primary objective is to determine and give effect to legislative intent as expressed in the language of the statute. *City of Rockwall v. Hughes,* 246 S.W.3d 621, 625 (Tex.2008); *Burnett–Dunham v. Spurgin,* 245 S.W.3d 14, 16 (Tex.App.-Dallas 2007, pet. denied). We use the definitions prescribed by the legislature and consider any technical or particular meaning the words may have acquired. *Hughes,* 246 S.W.3d at 625 (citing Tex. Gov't Code Ann. § 311.011(b) (West 2005)). Otherwise we construe the statute's words according to their plain and common meaning. Tex. Gov't Code Ann. § 311.011(a).

Regardless of whether the constitutionality of a statute has been challenged, an established principle of statutory construction also presumes legislative intent to comply with the Texas and United States Constitutions. *See Dreyer v. Greene,* 871 S.W.2d 697, 700 (Tex.1993) (Gammage, J., dissenting). We are instructed to avoid construing a statute in a manner rendering it unconstitutional. *In re Green,* 221 S.W.3d 645, 649 (Tex.2007) (per curiam) (orig. proceeding) (citing Tex. Gov't Code Ann. § 311.021(1)); *see also Marcus Cable Assocs. v. Krohn,* 90 S.W.3d 697, 706 (Tex. 2002) ("We must also, if possible, construe statutes to avoid constitutional infirmities."). If two reasonable statutory constructions exist, one of which would render the statute unconstitutional and the other would not, we are obligated to adopt the reasonable and constitutional interpretation. *Holmans v. Transource Polymers, Inc.,* 914 S.W.2d 189, 191 (Tex.App.-Fort Worth 1995, writ denied). These are principles of statutory construction and cannot be waived any more than subject-matter jurisdiction can be waived by not raising the argument in the trial court.

By the clear language of subsection 161.211(b), the bar applies only when a

parent has been "served by citation by publication." When a party is not properly served, process is invalid and the trial court acquires no personal jurisdiction over a defendant. *Rone Eng'g Serv., Ltd. v. Culberson*, 317 S.W.3d 506, 508 (Tex. App.-Dallas 2010, no pet.). As a result, any judgment entered in reliance on invalid service is void and unenforceable. *See id.; see also Paul v. Willis*, 69 Tex. 261, 7 S.W. 357, 359 (1887) ("A void judgment can not bind any one, and it is well settled it may be collaterally attacked."). The legislature did not elect in subsection 161.211(b) to bar attacks on termination orders where, for example, "service is attempted by publication," a defendant is "purportedly served by publication," "service is sought by publication," or where a "good faith effort has been made to serve citation by publication."

If we review the context in which service by publication is allowed, a construction of subsection 161.211(b) based on the plain language becomes even clearer. As the type of notice least likely to apprise the defendant of proceedings, service of citation by publication is a statutorily prescribed method of service allowed only when the whereabouts of a party are unknown. *See* TEX.R. CIV. P. 109; *see also Mullane v. Cent. Hanover B. & T. Co.*, 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (service by publication is method of notice least calculated to bring to potential defendant's attention the pendency of judicial action). When a defendant is located, regular service of process is required as provided in Texas Rule of Civil Procedure 106. *In re A.Y.*, 16 S.W.3d 387, 389 (Tex. App.-El Paso 2000, no pet.). Because authority for citation by publication derives solely from the statute, the requirements are strictly construed and the method prescribed is exclusive. *See Wiebusch v. Wiebusch*, 636 S.W.2d 540, 542 (Tex.App.-San Antonio 1982, no writ); *see also Uvalde Country Club v. Martin Linen Supply Co.*,

690 S.W.2d 884, 885 (Tex.1985) (per curiam) (failure to show strict compliance with rules relating to proper service renders any attempted service invalid and requires setting aside default judgment). Thus, no service is effected unless all statutory requirements are met.

Considering the strict requirements the legislature has imposed before a party is served by publication and the plain language of subsection 161.211(b), construing "served by publication" to mean "purportedly served" would allow for absurd and patently unconstitutional results, which we are instructed specifically to avoid. *See Hughes*, 246 S.W.3d at 626 (presumption legislature "intended a just and reasonable result" in enacting statute; must avoid "absurd result" in construing plain meaning of statute); *Krohn*, 90 S.W.3d at 706. If, for example, "served" were to mean "purportedly served," an absent parent, such as one in military service or away from home for some other reason, could forever lose parental rights through a party's false rule 109 affidavit so long as the termination decree was not contested within the six-month limitation.

Here, while the majority's interpretation of subsection 161.211(b) would suggest the legislature intended to eliminate all avenues of attack six months after termination of a parent's rights—including those where the court never obtained personal jurisdiction over the parent—another reasonable reading of the statute that presumes proper service would not lead to unconstitutional results. *See* TEX. GOV'T CODE ANN. § 311.021(1); *cf. Velasco v. Ayala*, 312 S.W.3d 783, 799–800 (Tex.App.-Houston [1st Dist.] 2009, no pet.) (holding that to preclude movant from challenging void decree of divorce and termination of parental rights pursuant to rule 329 or section 161.211 would ignore that plaintiff failed at

outset to invoke trial court's jurisdiction because no valid service).

While I agree that this State's policy is to provide stability and finality for children, *see* Tex. Fam.Code Ann. § 153.001(a)(2), the legislature's intent could not be—especially when no clear language suggests—effectively to create a presumption under subsection 161.211(b) that it is always in the best interest of the child to terminate parental rights after the expiration of six months regardless of whether the trial court ever acquired jurisdiction over the parent. Given the plain and specific language of subsection 161.211(b), the presumption the legislature intended the statute to comply with the Texas and United States Constitutions, and our obligation to construe statutes to avoid constitutional infirmities, I would conclude it was the intent of the legislature in enacting subsection 161.211(b) to bar attacks on parental termination orders only in situations where the parent was actually "served." [1]

### Service of Citation by Publication

To determine whether subsection 161.211(b) applies, we would be required to determine whether Mother was "served by citation by publication." Mother contends the trial court abused its discretion by denying her motion for new trial because (1) the DFPS knew her whereabouts and therefore committed extrinsic fraud in procuring citation by publication, and (2) the DFPS's affidavit was objectionable. In both issues, Mother argues service by publication was invalid. I would conclude that, even considering the entirety of the allegedly objectionable affidavit, the record before the trial court at the time of its termination decree did not support a finding of diligence sufficient to effect service by publication and, as a result, Mother was never served.

Here, after failing to serve Mother personally at the address listed in the petition or elsewhere, the DFPS attempted service of citation by publication. The DFPS's August 24, 2007 affidavit supporting service stated in relevant part:

> On this day personally appeared [Caseworker], who, having been by me duly sworn, on oath says:
>
> . . .
>
> Neither the residence nor whereabouts of [Mother] is known to me, although diligent efforts have been made:
>
> 3/20/07 Caseworker spoke with [Mother] and she gave her contact address as [street address].
>
> 8/20/07 Caseworker received a message from DA indicating that he was unable to serve [Mother] at the above address.
>
> 8/20/07 Caseworker received a phone call from [the aunt] and she reported that [Mother] called her at [phone number] asking to speak with the children.
>
> 8/20/07 Caseworker spoke with [Mother] at [phone number] regarding her

---

1.  While this Court recently addressed subsection 161.211(b) in *In re H.R.H.*, No. 05–07–01148–CV, 2008 WL 3984055 (Tex.App.-Dallas Aug. 29, 2008, no pet.) (mem. op.), that case is distinguishable from the one before us now. In that case, a pro se appellant attempted for the third time to set aside an order terminating his parental rights. *Id.* at *1. Previously in the proceedings, we concluded we had no jurisdiction over the appellant's appeal because his notice was untimely under Texas Rule of Appellate Procedure 26.1(b). *See In re H.H.*, No. 05–07–00139–CV, 2007 WL 730869 (Tex.App.-Dallas Mar. 12, 2007, no pet.) (per curiam) (mem. op.). On the appellant's third attempt, and citing subsection 161.211(b), we stated, "[a]ny collateral or direct attack on the August 15, 2006 order was precluded after February 28, 2007." *In re H.R.H.*, 2008 WL 3984055, at *3. Unlike Mother's case, the pro se appellant in *H.R.H.* made no argument regarding validity of service of the termination proceedings, distinguishing his case from Mother's.

contact address. She stated that she is in the process of moving and does not have a permanent address.

The address in the affidavit was the same address listed in the DFPS's petition for termination.

Approximately two months later, the trial court held a termination hearing at which Caseworker testified Mother visited her children at the DFPS office "last month [September] on the 4th." She testified she had Mother's phone number but was unable to obtain Mother's address at the time of the visit. Caseworker also testified she would inform Mother regarding court hearings, and if Mother showed up, it would be after the hearing was already finished. Following the termination hearing, the trial court signed a final judgment terminating Mother's parental rights.

Two years later, Mother filed a motion for new trial. At the hearing on Mother's motion, Caseworker again testified, stating her contact with Mother was minimal, Mother's appearance at prescheduled visitations and hearings was sporadic, and Caseworker gave Mother information regarding scheduled hearings "each time I spoke with the mother, whenever she was able to call me." Caseworker also referenced a meeting with Mother at the DFPS's office in August of 2007—the period during which the DFPS was attempting to effect service by publication for the termination proceedings.[2] The trial court denied Mother's motion for new trial, and Mother appealed.

Mother contends these facts show the DFPS's attempted service by publication was invalid. As described above, if service was not proper, the trial court never acquired personal jurisdiction over Mother and the termination decree is void and unenforceable. *Rone*, 317 S.W.3d at 508.

Presented with this proceeding to terminate Mother's rights—fully and finally—to her four children, we are obligated to "exercise liberality" in favor of Mother having her day in court after proper service of citation. *See Sexton v. Sexton*, 737 S.W.2d 131, 133 (Tex.App.-San Antonio 1987, no writ). "This is particularly true in suits affecting the parent-child relationship." *Id.*

Under rule 109, the clerk is authorized to issue citation for service by publication when a party to a civil case makes an oath that it has been unable to effect personal service, the residence of a defendant is unknown, and after due diligence, the party has been unable to locate the whereabouts of the defendant. *See* Tex.R. Civ. P. 109; *Wood v. Brown*, 819 S.W.2d 799, 800 (Tex.1991) (per curiam); *see also* Tex. Fam.Code Ann. § 102.010(a) (in suits affecting parent-child relationship, citation may be served by publication to persons who cannot be notified by personal service or registered or certified mail, as in other civil cases). In such cases, the court first must determine the sufficiency of diligence in attempting to determine the residence or whereabouts of the defendant before granting judgment based on such service. Tex.R. Civ. P. 109; *see Leithold v. Plass*, 488 S.W.2d 159, 164–65 (Tex.Civ.App.-Houston [14th Dist.] 1972, no writ). If the trial court finds lack of diligence, the plaintiff is required to undertake additional efforts to comply with rule 109. *In re A.Y.*, 16 S.W.3d at 389. The standard for diligence is no less where it is the DFPS seeking termination. *See* Tex. Fam.Code Ann. § 161.107(b) ("If a parent of the child has not been personally served in a suit in which the [DFPS] seeks termination, the department *must make a diligent effort* to locate that parent.") (emphasis added).

---

**2.** It is unclear from the record whether this is the same meeting Caseworker referenced at the termination hearing as being in September.

Two Texas cases are particularly instructive in the analysis of Mother's challenge to service by publication here. Both involve the diligence required when parties attempt to use publication, which is always the last resort for attempting to serve a party who cannot be located. *See Velasco v. Ayala*, 312 S.W.3d 783 (Tex.App.-Houston [1st Dist.] 2009, no pet.); *In re Marriage of Peace*, 631 S.W.2d 790 (Tex.App.-Amarillo 1982, no writ). The courts in both cases also emphasized the well-settled law that notice of a proceeding is irrelevant to the court's jurisdictional inquiry into whether the parties were served with process. *See Velasco*, 312 S.W.3d at 797; *Peace*, 631 S.W.2d at 794.

The court in *Peace* was faced with review of husband Charles's divorce decree obtained after Charles filed a rule 109 affidavit for service by publication in a Texas newspaper. After the court granted Charles a divorce, wife Guadalupe filed a rule 329 motion for new trial, which was denied. *Peace*, 631 S.W.2d at 791. Reversing the trial court's denial of Guadalupe's motion, the court concluded the record was devoid of evidence of diligence. The record showed the couple went to Mexico for annual vacations, they owned property in Mexico, Charles knew the location of residences for several of Guadalupe's relatives, and he had received at least one telephone call from her. *Id.* at 793. The court emphasized Charles knew where to send mail and money to Guadalupe in Mexico, and he had sent at least one letter. *Id.* at 794. That Guadalupe knew of the pendency of Charles's divorce action for a long period of time and made no effort to file an answer and contest the action in any way did not aid the trial court's jurisdiction to render the divorce decree. *Id.*

*Velasco* involved a divorce and termination suit. As in *Peace*, the court reversed the trial court's denial of a wife's motion for new trial challenging service of citation by publication. *See Velasco*, 312 S.W.3d at 787. Husband Alfonso alleged his wife Bestabe resided in Mexico. Yet, he moved for citation by publication, stating in his affidavit, among other things, an overnight delivery service was informed Bestabe was dead. *Id.* at 788. As is required in all cases involving attempted service by publication, the trial court appointed an attorney ad litem to represent Bestabe. *Id.* at 789; *see also* Tex.R. Civ. P. 244. At a "Default Hearing," Alfonso testified he had spoken with Bestabe by telephone during the course of the proceedings and had discussed the divorce with her; Bestabe's attorney ad litem testified that Alfonso "may have information on family members" who could assist in locating Bestabe. *Velasco*, 312 S.W.3d at 789. On appeal, the court concluded Alfonso did not effect valid service of process on Bestabe and the trial court never acquired personal jurisdiction over her.[3] *Id.* at 794–97. Although Alfonso had signed an affidavit stating Bestabe's residence was unknown, his second amended petition filed the same day as the affidavit supporting service by publication listed an address for Bestabe in Mexico. *Id.* at 795. Alfonso also had spoken with Bestabe via phone during the course of the proceedings. *Id.* at 796. The court concluded "under all the circumstances of [the] case—which include that Alfonso knew Bestabe's address in Mexico, had spoken to her by phone during the proceedings, and that Bestabe [did] not speak English—notice to Bestabe by publication in English in a Texas periodical did not constitute valid service...." *Id.* at

3. Service of process pursuant to the Hague Service Convention was required because Bestabe resided in Mexico. *Velasco*, 312 S.W.3d at 792 (citing Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 (entered into force Feb. 10, 1969)).

797. As in *Peace*, the court noted that actual notice to a defendant of a pending suit, without "proper notice," is not sufficient. *Id.*

Caseworker's affidavit here stated, "[n]either the residence nor whereabouts of [Mother] is known to me." But, as in *Peace* and *Velasco*, the record indicates the contrary. The live petition alleged a specific address where service could be effected on Mother personally, and Caseworker testified (1) she had a working phone number for Mother, (2) she could communicate with Mother by phone, (3) she spoke with Mother more than once, and (4) Mother had attempted to come to hearings. Caseworker's affidavit even mentions a conversation between Mother and a relative who was the children's guardian, yet the record shows no attempt by Caseworker to contact any of Mother's relatives for purposes of service. *See Peace*, 631 S.W.2d at 793; *Leithold*, 488 S.W.2d at 163. Critically, Mother visited her children at the DFPS office during a pre-arranged visit and was at that location for approximately an hour, an opportunity to effect personal service. Because Mother was located, regular service of process was required. *See In re A.Y.*, 16 S.W.3d at 389 (citing TEX.R. CIV. P. 106). Even though evidence exists that Caseworker informed Mother of the termination hearing, such notice would be insufficient to confer jurisdiction over Mother. *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990).

Under all the circumstances of this case—which include the DFPS's knowledge of Mother's working phone number and contact address, Caseworker's personal meeting with Mother for over an hour at the DFPS's offices during the time service by publication was being pursued, knowledge of the whereabouts of at least one relative, and the contradictions between the rule 109 affidavit and live testimony regarding Mother's whereabouts—I would conclude Mother was never "served by citation by publication." TEX. FAM.CODE ANN. § 161.211(b); *see* TEX.R. CIV. P. 109. Because attempted service was invalid, the trial court never acquired personal jurisdiction before signing the decree of termination, and the judgment terminating Mother's parental rights is void. *In re Bokeloh*, 21 S.W.3d 784, 793 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding).[4]

## Conclusion

On this record, I would conclude Mother's challenge to the termination decree was not precluded by the six-month deadline under subsection 161.211(b) of the family code because Mother was never served by publication. Her challenge being timely, I also would conclude the trial court had no jurisdiction over Mother at the time of the termination decree and the judgment is void, thus making it an abuse of discretion for the trial court not to grant Mother's motion for new trial. Accordingly, I would reverse the trial court's judgment terminating Mother's parental rights and, because Mother is now subject to the jurisdiction of the court, *see* TEX.R. CIV. P. 123, would remand for further proceedings. As the majority correctly emphasizes, stability of children is a foremost

4. Mother's attorney ad litem at the hearing on the petition for termination stated only that Mother "was served by publication, and I believe that publication would have been ripe on October 15, 2007." Her presence and statement, however, do not give the trial court personal jurisdiction over Mother. *See Velasco*, 312 S.W.3d at 799 ("[B]ecause we have concluded that the trial court did not acquire personal jurisdiction over [movant] at the commencement of the suit, the subsequent actions of the trial court in authorizing the ad litem to represent her interests at trial, and everything that flowed therefrom, are likewise a nullity.").

concern of this State. We also have a clear mandate from the legislature to interpret statutes according to their plain language and to presume legislative intent to comply with the Texas and United States Constitutions. TEX. GOV'T CODE ANN. §§ 311.011(a), 311.021(1). For the reasons stated, I dissent.