In re C.T.C., a Minor Child.

No. 05–11–01133–CV.

Court of Appeals of Texas,
Dallas.

April 30, 2012.

854

Jeremy C. Martin, Malouf & Nockels, LLP, Georganna L. Simpson, Simpson Martin, LLP, Dallas, TX, for Appellant.

Rebecca Ann Tillery, Kevin R. Fuller, Ashley Watkins McDowell, KoonsFuller, P.C., Dallas, TX, for Appellee.

Before Justices BRIDGES, LANG, and FILLMORE.

## OPINION

Opinion By Justice LANG.

Appellant ("Father") filed a petition for bill of review challenging the termination of his parental rights respecting C.T.C., a minor.[1] The trial court dismissed Father's petition for bill of review for lack of jurisdiction based on Texas Family Code sec-

tion 161.211(a). *See* TEX. FAM.CODE ANN. § 161.211(a) (West 2008). In three issues on appeal, Father contends (1) the six-month bar to attacks on termination orders in section 161.211(a) "presumes a valid, i.e., voluntary, affidavit of waiver of interest in a child"; (2) if the six-month bar in section 161.211(a) is jurisdictional, that statute is unconstitutional as applied to Father; and (3) section 161.211(a) is "more akin to a limitations-related affirmative defense such that dismissal for want of jurisdiction is improper." For the reasons below, we affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to Father's original and supplemental petitions for bill of review, Father and appellee ("Mother") met in August 2008 while attending college in Bryan–College Station and began dating. In January 2009, Mother told Father she was pregnant with Father's child. Father proposed to Mother in February 2009, and she agreed to marry him. Later that month, Mother moved into her parents' home in Coppell.

On August 1, 2009, Mother gave birth to C.T.C. Father signed an acknowledgment of paternity regarding C.T.C. on August 3, 2009. Following the birth of C.T.C., Mother continued to live with her parents in Coppell.

Father asserted that in fall 2009, Mother visited him in Bryan–College Station and told him that she had overheard her parents discussing the possibility of pursuing a $10,000 contribution from Father toward the medical expenses relating to C.T.C.'s birth. According to Father, Mother urged him to "sign over" his parental rights to

---

1. Pursuant to Texas Rule of Appellate Procedure 9.8, we use aliases to refer to the minor

and parents involved in this case. *See* TEX. R.APP. P. 9.8.

C.T.C. to Mother so that her parents would be "barred" from seeking any recovery from Father and he and Mother "could save the money to begin their life together as a family."

On October 10, 2009, Father executed an affidavit of waiver of interest in C.T.C. Based on that waiver of interest, Mother filed a petition to terminate the parent-child relationship on November 10, 2009. On November 14, 2009, Father executed a waiver of service of citation as to the termination proceeding. Finally, Father, Mother, and the trial court signed an "Agreed Order of Termination" dated November 24, 2009, terminating Father's parental rights. Father contended he executed the waiver of interest and agreed order of termination "based on [Mother's] representations to him that they would be married and raise C.T.C. together as a family following [Father's] graduation from college."

According to Father, on March 7, 2010, Mother "broke off the engagement" and ended their relationship. In Father's supplemental petition, he stated that "on or about April 14, 2010," he realized that there would be no reconciliation and that Mother was not going to allow him to have "a relationship" with his son. Father contacted counsel in April 2010.[2]

Father filed his original petition for bill of review on September 29, 2010, challenging the agreed termination order based on "extrinsic fraud" by Mother. Mother filed, in relevant part, a timely answer, a general denial, and a plea to the jurisdiction. In her plea to the jurisdiction, Mother contended section 161.211(a) requires any attack on an order terminating parental rights to be filed no later than six months after the order was signed. Mother argued the bill of review should be dismissed because section 161.211(a) bars Father's attack on the agreed termination order in that Father filed his bill of review more than six months after the date that order was signed. Additionally, Mother filed a separate motion to dismiss based on Father's failure to comply with the six-month time limit in section 161.211(a).[3]

During the hearing on Mother's plea to the jurisdiction and motion to dismiss, the trial court took judicial notice of the following evidence: (1) Father's October 10, 2009 affidavit of waiver of interest; (2) Father's November 14, 2009 waiver of service of citation; (3) the November 24, 2009 agreed order of termination; and (4) Father's September 29, 2010 original petition for bill of review. Father argued in relevant part at the hearing (1) section 161.211(a)'s "six-month window for filing to overturn a termination order" is an affirmative defense rather than a jurisdictional prerequisite; (2) Father's signing of the agreed order of termination was not "voluntary"; and (3) application of section 161.211(a)'s "rigid six-month rule" in this case "is not due process" and is "an unfair taking of a constitutional right of a parent." Mother asserted (1) *In re E.R.*, 335 S.W.3d 816

---

**2.** In an affidavit of Father attached as "Exhibit 'B'" to his original petition for bill of review, Father swore to a detailed version of the facts described above and stated, in part, that he contacted counsel in April 2010 and retained counsel in "mid-May." However, elsewhere in that same affidavit, Father stated, "I was not sure of the break-up until April of 2010. That same month, I contacted an attorney to inquire about my rights. I re-

tained an attorney mid-March to get my rights back."

**3.** Mother states in a footnote in her appellate brief that her motion to dismiss is contained in a supplemental clerk's record "delivered to" this Court on November 30, 2011. However, no supplemental clerk's record containing Mother's motion to dismiss was filed in this Court. Mother's motion to dismiss is not part of the record in this case.

(Tex.App.-Dallas 2011, pet. granted), established that the six-month time limit in section 161.211(a) is a jurisdictional bar; (2) the legislature did not intend to exempt attacks based on fraud from the six-month time limit in section 161.211(a); (3) Father has not asserted "what constitutional rights were violated"; and (4) there was no constitutional violation in this case because Father had notice and an opportunity to be heard.

Following the trial court's dismissal of Father's petition for bill of review for want of jurisdiction, this appeal was timely filed.

## II. DISMISSAL FOR WANT OF JURISDICTION

### A. Standard of Review

A plea to the jurisdiction challenges a trial court's subject matter jurisdiction. *See, e.g., City of Dallas v. Carbajal,* 324 S.W.3d 537, 538 (Tex.2010) (citing *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999)). Whether a court has subject matter jurisdiction is a question of law that we review de novo. *Id.* (citing *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004)); *see also In re D.K.M.,* 242 S.W.3d 863, 865 n. 1, (Tex.App.-Austin 2007, no pet.) (motion to dismiss based on lack of subject matter jurisdiction is functional equivalent of plea to jurisdiction and is reviewed de novo). We accept the allegations in the petition as true and construe them in favor of the pleader. *See In re A.M.,* 312 S.W.3d 76, 81 (Tex.App.-San Antonio 2010, pet. denied). Further, we may also consider relevant evidence and must do so when necessary to resolve the jurisdictional issues raised. *Id.* (citing *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000)).

Additionally, statutory construction and the constitutionality of a statute are legal questions and are reviewed de novo.

*See, e.g., F.F.P. Operating Partners, L.P. v. Duenez,* 237 S.W.3d 680, 683 (Tex.2007) (statutory construction); *In re C.P.J.,* 129 S.W.3d 573, 576 (Tex.App.-Dallas 2003, pet. denied) (constitutionality of statute).

### B. Applicable Law

Section 161.211 of the Texas Family Code provides

(a) Notwithstanding Rule 329, Texas Rules of Civil Procedure, the validity of an order terminating the parental rights of a person who has been personally served or who has executed an affidavit of relinquishment of parental rights or an affidavit of waiver of interest in a child or whose rights have been terminated under Section 161.002(b) is not subject to collateral or direct attack after the sixth month after the date the order was signed.

(b) Notwithstanding Rule 329, Texas Rules of Civil Procedure, the validity of an order terminating the parental rights of a person who is served by citation by publication is not subject to collateral or direct attack after the sixth month after the date the order was signed.

(c) A direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights or affidavit of waiver of interest in a child is limited to issues relating to fraud, duress, or coercion in the execution of the affidavit.

TEX. FAM.CODE ANN. § 161.211.

An individual who challenges the constitutionality of a statute bears the burden to establish its unconstitutionality. *See, e.g., In re D.J.R.,* 319 S.W.3d 759, 765 (Tex.App.-El Paso 2010, pet. denied). A claim that a statute is unconstitutional as applied is a claim that the statute, although generally constitutional, operates unconstitutionally as to the claimant. *Id.*

An as-applied challenger is required only to demonstrate that the statute operates unconstitutionally when applied to his particular circumstances. *Id.*

■■■■ "Courts are to presume that a statute is constitutional and should not reach a constitutional issue unless absolutely required." *In re C.M.D.,* 287 S.W.3d 510, 515 (Tex.App.-Houston [14th Dist.] 2009, no pet.); *accord In re B.L.D.,* 113 S.W.3d 340, 349 (Tex.2003); *Walker v. Gutierrez,* 111 S.W.3d 56, 66 (Tex.2003). Further, courts should decide constitutional issues narrowly based on the precise facts of the case, not speculative or hypothetical injuries. *See In re C.M.D.,* 287 S.W.3d at 515. We need not reach the constitutionality of a statute where there is no showing the operation of the challenged statute harmed the appellant. *See In re D.J.R.,* 319 S.W.3d at 765–66; *Walker v. Tex. Dep't of Family & Protective Servs.,* 312 S.W.3d 608, 620, 625 (Tex.App.-Houston [1st Dist.] 2009, pet. denied); *see also In re H.N.J.,* No. 10–10–00365–CV, 2011 WL 2937473, at *1 (Tex.App.-Waco July 13, 2011, no pet.) (mem. op.); *In re K.J.T.M.,* No. 06–09–00104–CV, 2010 WL 1664027, at *6 (Tex.App.-Texarkana Apr. 26, 2010, no pet.) (mem. op.).

### C. Analysis

■■■■ We begin by addressing together Father's first and third issues. In his first issue, Father contends "it was the intent of the legislature in enacting [section 161.211(a) ] to bar attacks on parental termination orders only in situations where the parent's affidavit was procured voluntarily, *i.e.,* in the absence of fraud." According to Father, his challenge to the agreed. termination order was not precluded under section 161.211(a) because his affidavit of waiver of interest in C.T.C. was "involuntary and invalid." In his third issue, Father asserts that, rather than be-

ing jurisdictional, section 161.211(a) is "more akin to a limitations-related affirmative defense such that dismissal for want of jurisdiction is improper."

Mother responds that those arguments have been "examined and rejected" by this Court. In support of her position, Mother cites *In re E.R.*

*In re E.R.* involved a petition for termination of a mother's parental rights to her four minor children that was filed by the Texas Department of Family and Protective Services ("DFPS"). *Id.* at 817. The petition for termination included an address for the mother where service could be effected. *Id.* After failing to effect personal service on the mother, the DFPS served the mother with citation by publication. *Id.* The mother did not appear at the termination proceeding, but she was represented at the proceeding by her attorney ad litem. *Id.* On November 14, 2007, the trial court signed a decree terminating the mother's parental rights to the children, finding that termination of the parent-child relationship between the mother and the children was in the children's best interest. *Id.* On November 16, 2009, the mother filed a motion for new trial under rule 329 of the rules of civil procedure. *Id.* The trial court denied the motion for new trial and the mother appealed to this Court. *Id.*

On appeal, the mother asserted the trial court erred by denying her motion for new trial because the DFPS committed extrinsic fraud in procuring service of citation by publication. *Id.* at 818. The DFPS contended the mother's motion for new trial, filed two years after the decree of termination was signed, was untimely under the strict deadline provided in section 161.211(b) for a person who was served by citation by publication to contest the validity of a termination decree. *Id.* In a panel majority opinion with one justice dissent-

ing, this Court concluded the trial court did not abuse its discretion in denying the mother's untimely motion for new trial. *Id.* at 825.

The majority stated "[t]he mandatory language of family code section 161.211 leaves no room for a construction other than a requirement that any collateral or direct attack on the termination of parental rights, including a motion for new trial, be filed no more than six months after the termination order is signed." *Id.* at 820. Further, the majority disagreed with the mother that the six-month deadline in section 161.211 is a statute of limitations affirmative defense that is waived if not pleaded or presented to a trial court. *Id.* at 821. The majority concluded, "The six-month deadline in family code section 161.211 is not a plea in avoidance, but is, rather, a bar to or preclusion of a challenge to a termination order more than six months after the termination order is signed." *Id.*

The majority addressed the dissent by stating that while "[t]he dissent would hold that section 161.211's six-month bar to [the mother's] direct or collateral attack on the validity of a termination order is unconstitutional," the mother "has not argued her constitutional rights have been violated or otherwise challenged the constitutionality of the statute and, therefore, has not preserved or presented the issue for our review." *Id.* at 822–23. Additionally, the majority stated, "The dissent concludes that the record before the trial court was insufficient to support due diligence for issuance of service by publication and, therefore, service by publication was not proper and the termination order was void." *Id.* at 825. However, the majority reasoned, that conclusion did not alter the outcome of the mother's appeal because section 161.211 explicitly provides that the "validity" of the termination order is not

subject to direct or collateral attack after six months. *Id.* at 826. In support of its conclusion, the majority cited, *inter alia*, section 161.211(c), which the majority described in a parenthetical as "noting that direct or collateral attack based on unrevoked affidavit of relinquishment of parental rights or affidavit of waiver of interest in a child is limited to issues relating to fraud, duress, or coercion, without exception to the mandated deadline of six months in which to attack the validity of termination order." *Id.*

Although the case before us involves section 161.211(a) rather than section 161.211(b), the language of the two sections is identical as to the bar or the preclusion of a challenge to the termination order six months after the order is signed. *See* Tex. Fam.Code Ann. § 161.211(a)-(b). Further, this Court did not limit its conclusions in *In re E.R.* to section 161.211(b). *See In re E.R.* at 820–21. Therefore, based on *In re E.R.*, even assuming without deciding that the record in this case showed "extrinsic fraud" by Mother, we cannot agree with Father that such fraud precludes the application of section 161.211(a). *See id.* at 826; *see also* Tex. Fam.Code Ann. § 161.211(a), (c); *In re C.R.P.*, 192 S.W.3d 823, 825–26 (Tex.App.-Fort Worth 2006, no pet.). Additionally, in accordance with *In re E.R.*, we conclude the six-month deadline in family code section 161.211(a) "is not a plea in avoidance, but is, rather, a bar to or preclusion of a challenge to a termination order more than six months after the termination order is signed." *Id.* at 821. We decide against Father on his first and third issues.

■ Next, we address Father's second issue, in which he contends that if the six-month time limit in section 161.211(a) is jurisdictional, section 161.211(a) is unconstitutional as applied to him because it "deprives him of the right to challenge an

extrinsic fraud-based order that terminated his constitutional parental rights." Specifically, Father asserts

> Even after [Father] executed the affidavit [of waiver of interest in C.T.C.], [Mother] continued to perpetrate a fraud on [Father] to ensure that he would not act to timely assert his constitutional parental rights to C.T.C. The interpretation of section 161.211(a) advocated by [Mother] rewards her for committing fraud while depriving [Father]— and more importantly, C.T.C.—of any procedural safeguard for [Father's] parental rights.

Additionally, Father asserts that during the time period in which he was seeking counsel and filing his petition for bill of review, he "had no reason to believe that section 161.211(a) was anything other than an affirmative defense subject to tolling and other common law doctrines, including extrinsic fraud." Finally, Father argues that although he did not amend his petition to include his constitutional challenge until after the hearing described above, his constitutional challenge was "tried by consent" at the hearing and therefore was preserved for review.

Mother contends, in relevant part, (1) Father did not preserve any constitutional complaint and (2) even if such complaint was properly preserved, Father "cannot show that the operation of the challenged statute caused him harm." Mother asserts that on March 7, 2010, "knowing the relationship was over, and knowing that he had only seen his child a handful of times since he had been born, [Father] still had jurisdiction under Section 161.211(a) to bring an attack on the Agreed Order." Further, Mother asserts, "by [Father's] own admission [Father] met with his trial attorneys as early as April 2010." Therefore, Mother contends, "[Father] was afforded his opportunity to be heard at a meaningful time and in a meaningful manner."

The record shows Father argued in the trial court, without objection by Mother, that section 161.211(a) is unconstitutional as applied to him because it violates his due process rights. However, on this record, we cannot conclude Father has met his burden to show he was harmed by the application of that statute to his case. *See In re D.J.R.*, 319 S.W.3d at 765–66. The record shows the agreed order of termination was signed on November 24, 2009. Thus, the six-month time period during which Father could challenge that order expired on May 24, 2010. *See* TEX. FAM. CODE ANN. § 161.211(a). Father pleaded he was aware of the alleged fraud by Mother "on or about April 14, 2010," more than one and one-half months before the end of the six-month time period, and, according to his affidavit, he contacted counsel by, at the latest, April 2010. Yet, despite the language in section 161.211(a) providing a six-month deadline, Father did not file his attack on the agreed order of termination until September 29, 2010. Father does not explain, and the record does not show, how section 161.211(a)'s six-month time limit operated to adversely affect his right to attack the agreed termination order when the six-month time period had not elapsed at the time he became aware of the alleged fraud and retained counsel. Accordingly, we decide Father's second issue against him. *See In re D.J.R.*, 319 S.W.3d at 765–66; *Walker*, 312 S.W.3d at 625.

## III. CONCLUSION

We decide against Father on his three issues. The trial court's judgment is affirmed.