Opinion issued August 4, 2022



In The

# Court of Appeals

For The

# First District of Texas

—————————————————

## NO. 01-21-00069-CV

—————————————————

**JAIME R. RAMIREZ AND ANDREA MARTINEZ-FLORES, Appellants**

**V.**

**DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES AND A.C.,**
**Appellees**

---

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-06763**

---

## O P I N I O N

Eighteen months after they relinquished their parental rights to two children, appellants Jaime R. Ramirez and Andrea Martinez-Flores (collectively, "appellants") filed a petition for bill of review to restore their parental rights on the ground that their relinquishments were induced by fraud. The trial court dismissed

appellants' bill of review on separate motions filed by appellees, the children's adoptive mother A.C. and the Texas Department of Family and Protective Services ("DFPS") (collectively, "appellees"). On appeal, appellants contend the trial court erred by dismissing the bill of review because appellees did not establish that the trial court lacked jurisdiction or their entitlement to judgment as a matter of law.

We affirm.

## Background

The children who are the subject of this appeal are half-siblings J.C. and E.C.[1] Jaime is the biological father of both children, and Andrea is the biological mother of only E.C.[2] In June 2016, DFPS removed J.C. from appellants' care after he sustained physical injuries consistent with abuse or neglect, including extensive bruising and fractured or broken bones. DFPS removed E.C. from the home a few weeks later because of the concerns about J.C.'s injuries. After some time in unrelated foster care placements, DFPS placed the children together in A.C.'s home.

DFPS petitioned to terminate appellants' parental rights to J.C. and E.C. The first termination trial ended in a mistrial. In the second termination trial, appellants both executed affidavits relinquishing their parental rights. Based on appellants'

---

[1]    For the purposes of this opinion, we refer to the children using their post-adoption initials "J.C." and "E.C."

[2]    The parental rights of J.C.'s mother were previously terminated.

affidavits and its own best-interest findings, the trial court signed final orders terminating appellants' parental rights in June 2018 ("termination orders"). The trial court granted DFPS managing conservatorship of the children. Appellants did not appeal the termination orders.

The next month, competing petitions to modify the conservatorship and adopt the children were filed by A.C. and the children's paternal relatives in Panama. After more than a year of litigation, including a lengthy trial on conservatorship, the trial court signed orders on (1) August 1, 2019, naming A.C. the children's possessory conservator ("conservatorship order"), and (2) November 22, 2019, certifying A.C.'s adoption of the children ("adoption orders"). Appellants did not appeal from the conservatorship or adoption orders.

On January 30, 2020, appellants filed a bill of review seeking to restore their parental rights on the ground that their affidavits relinquishing those rights were procured by fraud. Specifically, they alleged they were induced to execute the affidavits relinquishing their parental rights by the then-presiding judge's promise to place the children with paternal relatives in Panama. Appellants claimed they were unaware the judge had "reneged" on his promise until after the time for appealing the termination orders expired. According to appellants:

> The deadline to appeal the [termination orders] was July 2, 2018. The children were scheduled to leave to Panama on July 27, 2018 and on July 26, 2018[,] [the presiding judge] ordered 'no movement' of the

3

children from their foster home—no less then [sic] 24 hours from their scheduled flight.[3]

The bill-of-review petition specifically asked the trial court to set aside the termination and conservatorship orders but did not expressly make the same request as to the adoption orders. In their prayer for relief, however, appellants requested restoration of their parental rights, the return of the children, and the extinguishment of A.C.'s or DFPS's "legal rights or access to the children[.]"

Appellants attached affidavits to the bill-of-review petition—one each from Jaime and Andrea, one each from the counsel who represented them in the termination proceedings, and one from Ambassador Juan B. Sosa of the Panamanian Consulate in Houston—that were consistent with the pleaded factual allegations. The affidavits of counsel stated they were present when the presiding judge "promised [their] client[s] . . . that if they agreed to relinquish their parental rights to their children then the children would be placed with their paternal aunt . . . in Panama." Appellants' own affidavits added that they were ready to proceed to trial on DFPS's petition to terminate their parental rights and would not have relinquished their parental rights had they known that the children would not be sent to Panama. Ambassador Sosa's affidavit indicated his support for appellants' efforts to place the children in Panama. He averred that he attended a hearing at which the presiding

---

3    The no-movement order does not appear in the appellate record, but neither A.C. nor DFPS disputes the trial court issued the order on July 26, 2018.

judge established a "quid-pro-quo:" Jaime would agree to "surrender" and "stay away" from the children and the judge would send the children to Panama. According to Sosa:

> Arrangements were made to get passports for the children, buy plane tickets and implement the judge's decision. The process took longer than necessary and it was obvious that someone was delaying the process, in an effort to void the fateful decision of [J.C.] and [E.C.] leaving the United States for Panama.

> When the foster parent introduced a request for adoption, it became clear that the promise that [the presiding judge] . . . made of sending the children to Panama in return of [Jaime's] renunciation, was in danger of being nullified.

A.C. answered appellants' bill-of-review petition, generally denying the allegations and alleging the statute of limitations and laches as affirmative defenses. In addition, she filed a combined motion to dismiss and motion for summary judgment. In her motion to dismiss, A.C. argued that appellants' failure to file the bill-of-review petition within the six-month deadline provided in Section 161.211(a) of the Family Code deprived the trial court of subject-matter jurisdiction. *See* TEX. FAM. CODE § 161.211(a) (providing "validity of an order terminating the parental rights of a person . . . who has executed an affidavit of relinquishment of parental rights . . . is not subject to collateral or direct attack after the sixth month after the date the order was signed."). She also challenged appellants' standing to collaterally attack the conservatorship order following the termination of their parental rights. Finally, A.C. argued in her summary-judgment motion that appellants' challenge to

5

the termination orders was barred, as a matter of law, by limitations and laches and because the evidence conclusively established appellants knew any promise to place the children in Panama was unfulfilled before the bill-of-review deadline expired.

The appellate record suggests that DFPS also answered and moved to dismiss the bill-of-review petition for lack of subject-matter jurisdiction. Although the appellate record does not contain copies of these pleadings, appellants' response to DFPS's dismissal motion, which is included in the appellate record, indicates DFPS also sought dismissal on the ground that the bill-of-review petition was untimely under the Family Code.

The trial court entered an order dismissing appellants' bill of review and granting (1) A.C.'s motion to dismiss, (2) A.C.'s motion for summary judgment, and (3) DFPS's motion to dismiss. This appeal followed.

## Family Code Section 161.211

Appellants contend the trial court erred by dismissing their petition for bill of review seeking restoration of their parental rights as untimely under Section 161.211(a) of the Family Code. Appellants complain that (1) Section 161.211(a) cannot be interpreted as time-barring their petition, and (2) even if it could, we are constitutionally barred from enforcing any temporal limitation on their fraud-based attack on the termination orders.

## A.     Timeliness

"A bill of review is an equitable proceeding, brought by a party seeking to set aside a prior judgment that is no longer subject to challenge by a motion for new trial or a direct appeal." *Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015) (quotation omitted). Such "[c]ollateral attacks on final judgments are generally impermissible because it is the policy of the law to give finality to the judgments of the courts." *In re D.S.*, 602 S.W.3d 504, 512 (Tex. 2020) (quotation omitted). The Texas Supreme Court has admonished that finality of judgments "is uniquely important in family law matters, especially parental-termination proceedings":

> The private interest affected in [parental termination proceedings] is commanding for all litigants involved. Indeed, [f]ew judgments have more substantial future ramifications than those affecting parentage. Like their parents, children have a compelling interest in finality and stability. As we have long acknowledged, children's lives cannot be kept in limbo while judicial processes crawl forward[.]

*Id.* at 512–13 (quotations and citations omitted).

When parents have chosen to relinquish their rights to a child, the Family Code limits the time and grounds for collateral or direct attacks on the order terminating their parental rights. *See* TEX. FAM. CODE § 161.211(a), (c). Section 161.211 provides:

> (a) Notwithstanding Rule 329, Texas Rules of Civil Procedure, the validity of an order terminating the parental rights of a person . . . who has executed an affidavit of relinquishment of parental rights . . . is not

subject to collateral or direct attack after the sixth month after the date the order was signed.[4]

. . .

(c) A direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights . . . is limited to issues relating to fraud, duress, or coercion in the execution of the affidavit.

*Id.*; *see In re C.R.P.*, 192 S.W.3d 823, 825 (Tex. App.—Fort Worth 2006, no pet.) (citing Section 161.211(a) for principle that "[t]he validity of an order terminating a person's parental rights under an affidavit of relinquishment of parental rights is not subject to collateral or direct attack *after the sixth month after the date the order was signed*" (emphasis in original)).

It is undisputed that appellants executed affidavits relinquishing their parental rights to J.C. and E.C. Appellants argue their affidavits were void because they were induced by the trial court's misrepresentation that the children would be placed with Panamanian relatives, which amounts to an assertion of fraud. Even though appellants raise the type of challenge permissible under Section 161.211(c) in a collateral or direct attack on a termination order, their argument rests upon a critical

---

4    There is disagreement in the case law as to whether the six-month deadline in Section 161.211(a) is a jurisdictional bar or is in the nature of a limitations period that must be pleaded as an affirmative defense. *See, e.g.*, *In re E.R.*, 385 S.W.3d 552, 567 n.27 (Tex. 2012). We need not resolve the disagreement here because A.C. raised both grounds in the trial court, pleading an affirmative defense of "limitations" and moving to dismiss appellants' action for want of jurisdiction.

assumption—that they can still litigate the issue of whether their affidavits of relinquishment were induced by fraud. We conclude they cannot.

Resolution of this issue turns on statutory construction, which presents a question of law that we review de novo. *See Tex. W. Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "To discern that intent, we begin with the statute's words." *Id.* "Where text is clear, text is determinative of [legislative] intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). The words cannot be examined in isolation but must be informed by the context in which they are used. *TGS-NOPEC Geophysical*, 340 S.W.3d at 441. We rely on the plain meaning of the words, unless a different meaning is supplied by legislative definition or is apparent from the context, or unless such a construction leads to absurd results. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *see also* TEX. GOV'T CODE § 311.011 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). We further presume the Legislature chooses statutory language with

9

care, including each word chosen for a purpose, while purposefully omitting words not chosen. *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008).

Interpreting subsections (a) and (c) of Section 161.211, the Austin Court of Appeals has concluded that because "both provisions constrain both 'direct' and 'collateral' attacks, without limitation or qualification," the Legislature intended that "subsections (a) and (c) have sweeping, all-encompassing breadth, applying to complaints of everything from procedural errors to jurisdictional defects." *Moore v. Brown*, 408 S.W.3d 423, 435 (Tex. App.—Austin 2013, pet. denied). The Texas Supreme Court agreed. *In re D.S.*, 602 S.W.3d at 516 (expressly agreeing with *Moore* court about "sweeping, all-encompassing breadth" of Section 161.211).

Considering the language of subsection (a) in particular, it bars any "collateral or direct attack" on the "validity of an order terminating the parental rights of a person . . . who has executed an affidavit of relinquishment of parental rights" "after the sixth month after the date the order was signed." TEX. FAM. CODE § 161.211(a). Appellants' petition for bill of review is a collateral attack on the "validity" of the orders terminating their parental rights, and appellants are each a person "who has executed an affidavit of relinquishment of parental rights." The termination orders in this case were signed on June 12, 2018, making December 12, 2018 the "sixth month after [that] date." *See* TEX. GOV'T CODE § 311.014(c) (when counting "months" in codes, look to corresponding date in successive months). Because

appellants did not file their petition for bill of review until January 2020, it was untimely under Section 161.211(a). *See* TEX. FAM. CODE § 161.211(a); *see also Moore*, 408 S.W.3d at 436 (holding parents' petition for bill of review challenging termination and adoption orders, which was filed three days after the six-month deadline in Section 161.211(a), was untimely); *In re C.T.C.*, 365 S.W.3d 853, 858 (Tex. App.—Dallas 2012, pet. granted, jdgm't vacated w.r.m.) (holding parent's petition for bill of review challenging termination order, which was filed four months after end of the six-month deadline in Section 161.211(a), was untimely); *In re C.R.P.*, 192 S.W.3d at 825–26 (holding parent's petition filed five years after termination of parental rights was untimely under Section 161.211(a)).

Despite the plain language of Section 161.211(a) compelling a conclusion that their bill of review petition was untimely, appellants urge that subsection (c) must be interpreted as expanding or eliminating subsection (a)'s six-month deadline in cases involving fraud, duress, or coercion. We find no support in the statutory language for such an interpretation. Section 161.211(c) "plainly and unmistakably limits collateral attacks" on orders terminating parental rights "to specific grounds." *In re D.S.*, 602 S.W.3d at 516. None of the words chosen by the Legislature to restrict the grounds a parent who has relinquished their parental rights may assert indicate an intention to avoid the temporal limitation in subsection (a) when those specific grounds are presented. To the contrary, the Texas Supreme Court has recognized

11

that the Section 161.211(c) limitation "quite reasonably precludes subsequent bites at the apple that threaten finality in perpetuity." *Id.* at 517. Given the Legislature's intention to constrain "subsequent bites at the apple," we cannot reasonably construe subsection (c) to expand indefinitely the time for such challenges. *See id.* at 516 ("The Legislature has the authority, within constitutional limits, to restrict post-judgment jurisdictional challenges via collateral attack, and we are not at liberty to judicially expand the statute's plain language."); *see also In re C.T.C.*, 365 S.W.3d at 858 (assuming without deciding that record showed extrinsic fraud by mother in securing father's affidavit waiving interest in child, but disagreeing with father that such fraud precluded application of Section 161.211(a)).

Absent a showing of a constitutional bar to Section 161.211(a)'s enforcement, an issue we address below, we must give effect to the six-month deadline imposed by the Legislature on appellants' petition challenging the termination orders. *See In re D.S.*, 602 S.W.3d at 516.

## B.    Constitutionality

Appellants contend that Section 161.211(a)'s temporal limitation on their fraud-based attack on the termination order deprives them of due process under the United States and Texas Constitutions and the right to a jury trial under the Texas

12

Constitution.[5] *See* U.S. CONST. amends. V, XIV; TEX. CONST. art. 1, §§ 15, 19.

Appellants have not met their burden to establish the unconstitutionality of Section

161.211(a).

### 1. Applicable law

We review questions raising constitutional concerns de novo. *See State v. Hodges*, 92 S.W.3d 489, 494 (Tex. 2002); *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989). When confronted with a challenge to the constitutionality of a statute, we presume the statute is valid and that the Legislature has not acted unreasonably or arbitrarily. *See Methodist Healthcare Sys. of San Antonio, Ltd. v. Rankin*, 307 S.W.3d 283, 285 (Tex. 2010); *Adame v. 3M Co.*, 585 S.W.3d 127, 139 (Tex. App.—Houston [1st Dist.] 2019, no pet.). The individual challenging the statute has the burden to establish its unconstitutionality. *Adame*, 585 S.W.3d at 139.

---

[5] Appellants also cite the Texas Constitution's provisions for equal rights and equality under the law. *See* TEX. CONST. art. 1, §§ 3, 3a. But they do not make any arguments applying the legal principles in these provisions. Consequently, their brief does not meet the minimum requirements for appellate review, and any argument that Section 161.211 violates equal-rights or equality-under-the-law guarantees is waived. *See* TEX. R. APP. P. 38.1(i) (requiring appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *see also Guimaraes v. Brann*, 562 S.W.3d 521, 545 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("[A] brief that does not contain citations to appropriate authorities and to the record for a given issue waives that issue."); *Francis v. Davis*, No. 01-19-00350-CV, 2021 WL 1375587, at *4 (Tex. App.—Houston [1st Dist.] Apr. 13, 2021, no pet.) (mem. op.) (constitutional complaints waived due to inadequate briefing).

A party may challenge a statute as being unconstitutional on its face or as applied to that party. *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 n.16 (Tex. 1995); *In re D.R.L.*, No. 01-15-00733-CV, 2016 WL 672664, at *9 (Tex. App.—Houston [1st Dist.] Feb. 18, 2016, no pet.) (mem. op.). "[A] facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid." *In re D.R.L.*, 2016 WL 672664, at *10 (quotation omitted). We consider the statute as written, rather than as it operates in practice. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000). In contrast, an as-applied challenge concedes the statute is generally constitutional but claims it operates unconstitutionally when applied to a particular person or set of facts. *Garcia*, 893 S.W.2d at 518 n.16; *8100 N. Freeway, Ltd. v. City of Hous.*, 363 S.W.3d 849, 855 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

### 2. Analysis

Although appellants purport to challenge the constitutionality of Section 161.211(a) both on its face and as-applied, appellants have not argued that the statute is invalid under all circumstances or otherwise applied the legal principles governing a facial challenge to the constitutionality of a statute. Consequently, they have waived their facial challenge, and we limit our analysis to the as-applied challenge. *See* TEX. R. APP. P. 38.1(i) (requiring appellant's brief to "contain a clear and concise

14

argument for the contentions made, with appropriate citations to authorities and to the record"); *see also Guimaraes*, 562 S.W.3d at 545 ("[A] brief that does not contain citations to appropriate authorities and to the record for a given issue waives that issue."); *Francis*, 2021 WL 1375587, at *4 (constitutional complaints waived due to inadequate briefing).

On this record we cannot conclude that appellants satisfied their burden to show they were harmed by Section 161.211(a)'s application. *See, e.g.*, *In re D.J.R.*, 319 S.W.3d 759, 765 (Tex. App.—El Paso 2010, pet. denied) (refusing to consider whether statute was unconstitutional violation of separation-of-powers clause because appellant "wholly failed to show how he was harmed by its application to his case"); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 620, 625 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (refusing to reach constitutionality of statute under due-process and separation-of-powers clauses absent showing that operation of challenged statute caused appellant harm). In opposing the motions seeking dismissal of their petition under Section 162.211(a), appellants did not present any evidence showing they could not have challenged the termination orders within the time provided by the statute. As stated, the termination orders were signed on June 12, 2018, giving appellants until December 12, 2018 to attack the termination orders, either collaterally or directly. *See* TEX. PROP. CODE § 161.211(a); *see also* TEX. GOV'T CODE § 311.014(c). Although appellants pleaded

15

that they did not know the presiding judge had "reneged" on his promise to place the children in Panama before the twenty-day deadline for a direct appeal expired, they failed to show that they did not acquire that knowledge before the expiration of the six-month deadline to collaterally attack the termination orders. The trial court entered its order prohibiting the children from being moved out of A.C.'s home and to Panama on July 26, 2018, well within the six-month period for challenging the termination orders based on fraud. *See* TEX. FAM. CODE § 161.211(a), (c). In addition, Ambassador Sosa stated in his affidavit supporting appellants' petition that, "[w]hen [A.C.] introduced a request for adoption, it became clear that the promise that [the presiding judge] . . . made of sending the children to Panama . . . was in danger of being nullified." A.C. petitioned to adopt the children on July 22, 2018, a date also within the six-month period for challenging the termination orders based on fraud. *See id.* By failing to show that they could not make their fraud-based challenge to the termination orders in the time provided by Section 161.211(a), appellants have failed to demonstrate harm from the statute's application. *See, e.g.*, *In re D.J.R.*, 319 S.W.3d at 765; *Walker*, 312 S.W.3d at 620, 625.

Having concluded both that appellants petition for bill of review was untimely under Section 161.211(a) and that appellants failed to establish a constitutional bar to the enforcement of Section 161.211(a), we hold the trial court did not err by dismissing appellants' petition under Section 161.211(a).

## Standing

The extent to which appellants challenge the trial court's conservatorship and adoptions orders on appeal is unclear. We need not resolve the lack of clarity, however, because appellants lack standing to challenge those orders.

A party's standing to seek relief is a question of law, which we review de novo. *In re McDaniel*, 408 S.W.3d 389, 397 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Section 161.206(b) of the Family Code provides that "an order terminating the parent-child relationship divests the parent and the child of all legal rights and duties with respect to each other, except that the child retains the right to inherit from and through the parent unless the court otherwise provides." TEX. FAM. CODE § 161.206(b); *see also In re M.S.*, No. 02-21-00007-CV, 2021 WL 2654143, at *20 (Tex. App.—Fort Worth June 28, 2021, pet. denied) (mem. op. on reh'g) ("When a trial court terminates a birth parent's parental rights, the birth parent is no longer the 'parent' under the Texas Family Code." (citing TEX. FAM. CODE § 101.024(a)). The terminations of appellants' parental rights remain intact under our holdings. Consequently, appellants have no legal interest in the children and lack standing to attack the conservatorship and adoption orders. *See In re H.M.M.*, 230 S.W.3d 204, 204–05 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (holding court lacked jurisdiction to consider mother's appeal of trial court's failure to grant sole custody to her father after it terminated her parental rights); *Ryder v. State*, 917 S.W.2d 503,

505 (Tex. App.—Waco 1996, no writ) (holding mother whose parental rights were terminated did not have standing to appeal review hearing's outcome); *Glover v. Moore*, 536 S.W.2d 78, 79–80 (Tex. App.—Eastland 1976, no writ) (holding mother who sought managing conservatorship of child after termination of her parental rights had no justiciable interest in subject matter of litigation); *see also Durham v. Barrow*, 600 S.W.2d 756, 761 (Tex. 1980) (noting mother whose parental rights were terminated had standing to attack termination decree but lacked standing to bring bill of review attacking child's adoption if termination decree was valid); *In re Lambert*, 993 S.W.2d 123, 132 (Tex. App.—San Antonio 1999, orig. proceeding) (stating in adoption matter that "[f]ormer parents do not have standing to invoke the trial court's continuing jurisdiction over managing conservatorship issues").

Because appellants lack standing to challenge the conservatorship and adoption orders, we hold that we lack subject matter jurisdiction to review them. *See Ryder*, 917 S.W.2d at 505 (holding appellate court lacked subject-matter jurisdiction because mother lacked standing).[6]

---

[6]     Our holdings that appellants' challenge to the termination order was untimely and that they lack standing to challenge the trial court's other orders are dispositive of this appeal. Accordingly, we need not reach appellants' remaining issue challenging the trial court's summary-judgment ruling. *See* TEX. R. APP. P. 47.1.

**Conclusion**

We affirm the trial court's judgment.


Amparo Guerra
Justice

Panel consists of Justices Landau, Guerra, and Farris.